## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULIAN EDWARD LARKINS,     )
                                  )    Civil Action No. 2:19-cv-721
                                  )
          Petitioner,         )
                                  )    Chief United States Magistrate Judge
                                  )    Cynthia Reed Eddy
      vs.                  )
                                  )
SUPERINTENDENT  BRITTAIN,  )
DISTRICT ATTORNEY OF        )
ALLEGHENY COUNTY,  ATTORNEY )
GENERAL OF THE STATE OF    )
PENNSYLVANIA,            )
                                  )
         Respondents.      )

## MEMORANDUM OPINION AND ORDER[1]

Petitioner, Julian Edward Larkins ("Larkins"), a prisoner at the State Correctional Institution in Frackville, filed a *pro se* Petition and counseled Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"), challenging the Judgment of Sentence imposed on him at Criminal Case Nos. CP-02-CR-0015679-2009 (docket  number "15679-2009") and CP-02-CR-0017394-2009 (docket number "17394-2009"), by the Court of Common Pleas of Allegheny County, on April 10, 2012. (ECF Nos. 7, 8, 10).  For the reasons that follow, the Petition will be dismissed with prejudice. Furthermore, because jurists of reason would not find this disposition of the Petition debatable, a certificate of appealability will also be denied.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of final judgment. (ECF Nos. 13 and 21).

1

**Factual and Procedural History**

This case arises from the shooting death of Stefan Whitfield ("Whitfield") and the shooting of Herman Moore ("Moore") by Larkins on in the early morning hours of October 15, 2009, near the Mac-Can-Do Bar in the Homewood section of the City of Pittsburgh. Specifically, Larkins was charged at docket number 17394-2009 with criminal attempt to commit homicide and aggravated assault for shooting and injuring Moore, and at docket number 15679-2009 with criminal homicide and discharging a firearm into an occupied structure for the death of Whitfield. Larkins was tried by a jury from January 10 to January 17, 2012, and the following relevant facts were established. *See* Trial Transcripts Volumes 1 and 2 ("TT1" and "TT2").

By way of background, victims Moore and Whitfield were friends who frequented the Mac-Can-Do Bar, located near the intersection of Brushton Avenue and Kelly Street in Homewood, Allegheny County, Pennsylvania. Moore arrived alone at the bar between 10:00 p.m. and 11:00 p.m. on October 14, 2009. Whitfield was already at the bar upon Moore's arrival. Moore and Whitfield eventually were "smoking a little weed outside" and heard gunshots. TT1 at 214. After hearing the third shot, both men ran. Moore ran "to the back of the bar." *Id*. at 216. Then, when Moore heard sirens, he went to the front of the bar, saw Whitfield laying on the ground[2] and kept walking. Moore had been shot in the arm while running.

Officer John Shamlin was dispatched to the area near the Mac-Can-Do bar, and he was the first police officer to arrive. He saw "a male laying down on the sidewalk." TT2 at 51. The

---

[2] According to Moore, police had arrived, but paramedics had not by that time.

male, later identified as Whitfield, was laying "face-up;" his "face was covered in blood;" and he "appeared to be deceased." *Id*. at 52.  Whitfield was later pronounced dead.

Meanwhile, Donald Wilson, a former City of Pittsburgh Police Officer who owned a security firm hired to patrol a housing development in the Homewood area, heard gunshots. Specifically, he and his partner, Derek Vasser, were in separate vehicles headed from the housing area they were patrolling to a nearby Sunoco gas station.  Wilson testified that after hearing several gunshots and seeing gun flashes, he backed up his vehicle and saw "a black male that had on black pants, [and] a gray hooded top."[3] TT1 at 267.  According to Wilson, Larkins "started running across this open field to an alleyway called Formosa Way." *Id*. at 267-68. Wilson also saw "another gentleman that was coming in the opposite direction" who "ran up that alleyway but he turned and cut off." *Id*. at 268.  Wilson then tried to maneuver his vehicle to chase Larkins, and eventually came upon Vasser, who "had his weapon on [Larkins]" while Larkins was on the ground.[4] *Id*. at 270.  Wilson exited his car and approached the individual, who told Wilson that "he threw something under the car." *Id*. at 271.  Using his flashlight, Wilson looked under the car, and saw what "appeared to be a black Glock pistol laying on the ground." *Id*.  Wilson and Vasser then handcuffed Larkins.

According to Wilson, Larkins "started struggling as if he wanted to get up to try to run," and Larkins told Wilson that "his friend had just been shot." *Id*. at 278.  Vasser called 911. City of Pittsburgh Police Officer Daniel Zeltner was the first to arrive at this scene.  At that time,

---

[3] This man was later identified as Larkins.

[4] Vasser testified that he saw a "gentleman come off of Formosa Way and come underneath a white SUV parked on the corner." TT1 at 340.  Vasser drew his gun and was trying to pull Larkins out from under the car when Wilson arrived.

Larkins was "handcuffed on his stomach" and lying facedown on the ground. TT2 at 75.  Officer Zeltner testified that Larkins was wearing a "gray hooded sweatshirt and dark pants." *Id*. Larkins was also wearing a "multi-colored hat with some braids." *Id*. at 75-76.  Officer Zeltner recognized Wilson and Vasser as "security agents that work in a housing complex in Homewood." *Id*. at 76.  After Officer Zeltner arrived, Vasser and Wilson stood Larkins up, and they searched him.  They recognized a cell phone and a hat that was "inside of his hoody jacket." *Id*. at 79.  Larkins was then placed in Officer Zeltner's patrol vehicle.  Meanwhile, Wilson and Vasser told Officer Zeltner about "a gun under the vehicle, and the gun was recovered." *Id*. at 82.

Detective Charles Hanlon "took [Larkins] out of the car and performed a gunshot residue test on his hands." TT2 at 110.  Hanlon transported Larkins back to the homicide office, packaged Larkins's sweatshirt as evidence, and processed the gunshot residue test.[5]  Hanlon also collected the "Glock 9 mm located underneath the white Buick SUV and a [] multi-colored knit cap with long hair braids [] attached."[6] *Id*. at 115.

Based on the foregoing incident, Larkins was charged at the foregoing docket numbers. Prior to the jury trial, the Commonwealth filed a motion *in limine* seeking to preclude "evidence related to the fact that [] Derek Vasser engaged in misconduct while acting in his capacity as a deputy constable and/or evidence that Mr. Vasser's appointment as a deputy constable was revoked due to that misconduct." Motion *in Limine* (ECF No. 17-1) at 41.  Specifically, the

---

[5] This testing revealed that there was gunshot residue on Larkins. *See* TT2 at 171.

[6] This gun that matched 20 spent cartridges cases found near Whitfield.  In addition, Thomas Meyers, a forensic scientist with the Allegheny County Medical Examiner's Office, testified that he examined DNA found on that firearm and compared it samples from Whitfield and Larkins. Meyers was able to exclude Whitfield as a contributor to the DNA mixture found on the firearm. TT2 at 290.  Meyers was not able to exclude Larkins. *Id*. at 292.

4

Commonwealth contended that Larkins should be precluded from utilizing this evidence as impeachment of Vasser pursuant to Pennsylvania Rules of Evidence 403and 608. *See* Hearing Transcript, 3/8/2011, at 4-5.

On March 17, 2011, the trial court entered an order barring Larkins from introducing "evidence in the trial [] related to the fact that Judge Manning found that Derek Vasser engaged in misconduct while acting in his capacity as a deputy constable and/or evidence that Mr. Vasser's appointment as a deputy constable was revoked due to that misconduct and/or evidence that Judge Jeffrey A. Manning found the testimony of Derek Vasser to be incredible." Order (ECF No. 17-1) at 47.

Larkins proceeded to a jury trial at both docket numbers from January 10-17, 2012, before The Honorable Kathleen A. Durkin, where the aforementioned evidence and testimony were presented.  In addition to the aforementioned evidence and testimony from Moore, Shamlin, Wilson, Vasser, Zeltner, and Hanlon, the jury heard evidence and testimony from numerous other witnesses, including Detective Robert Renk.  It was the Commonwealth's theory of the case that in early 2009 Larkins and Moore were involved in an altercation between their respective groups at another bar, which provided motive for this shooting.

Prior to Renk's testimony, which was going to include transcripts from 19 telephone calls made to and from Larkins in both May and August 2009, counsel for Larkins objected. TT2 at 5. Larkins contended that the phone calls were "too remote" because they were made months prior to the October shooting.  In addition, Larkins argued that because Moore testified at trial that he does not go by the name "Fat Herm," the calls, which referenced Fat Herm, were irrelevant. *Id.* at 5-6.  According to the Commonwealth, these 19 calls were relevant because Larkins was

discussing an "incident that happened at the Trappers Club where people were fighting." *Id*. at 7. Specifically, "Fat Herm was on the other side of that fight." *Id*.  The Commonwealth contended that despite Moore's testimony that he was not Fat Herm, these calls established motive. *Id*. Larkins responded that this testimony was essentially the Commonwealth's way of tying the shooting to activity related to the Homewood Crips.[7] *Id*. at 9.  The trial court permitted the introduction of these 19 calls, and the explanatory testimony of Renk, but ruled there could not be a reference to the federal investigation.  The trial court anticipated objections during Renk's testimony.

At trial, Renk testified that during 2009, he intercepted "a number of different telephone calls involving [] Larkins, that were either made by him or received by him." TT2 at 20.  He testified that these interceptions were conducted pursuant to court orders on both May 6, 2009, and August 25, 2009, and there were 19 calls "that may relate to this matter." *Id*. at 21.  The Commonwealth played each of the calls at trial. *Id*.  at 27-43.  Relevant at this juncture is the following.

Call 1 occurred on May 6, 2009, and was an incoming call to Larkins from Asa Thompkins lasting nearly six minutes. *Id*. at 26.  The two discussed legal troubles, guns, and gunshot wounds. The relevant portion of the call occurred toward the end, when the two discussed a fight where Larkins said, "Fat Herm and them jumped me" at the Trappers Club. Transcript of Call 1 (ECF No. 17-1) at 364.

---

[7] The reason why these intercepts were court ordered in the first place was because there was an ongoing federal investigation into the Homewood Crips. TT2 at 12.  It was for this reason that Renk was involved in this matter.

Calls 3 through 19 all occurred in the late evening of August 23, 2009.  Larkins spoke to "Booter," Thompkins, Dorian Peebles, Corey Clark, "Tiki," and Mariah Bey.[8]  The inference from these calls was supposed to be that Larkins had previously tried to track down and shoot Moore near the Mac-Can-Do Bar. *See* Transcripts of Calls 3-19 (ECF No. 17-1) at 366-382.  For example, Call 15 was a three-minute call from Larkins to "Tiki," who was standing outside the Mac-Can-Do Bar, and told Larkins that he did not see "Chubs."[9]  Transcript of Call 15 (ECF No. 17-1) at 378.

On January 17, 2012, the jury found Larkins guilty of all charges, and on January 19, 2012, the Commonwealth filed notice of its intent to seek a mandatory sentence pursuant to 42 Pa.C.S. § 9712, because Larkins visibly possessed a firearm.  On April 10, 2012, Judge Durkin sentenced Larkins to a mandatory term of life imprisonment without parole for first-degree murder and imposed additional concurrent and consecutive sentences for the other convictions.  Trial counsel, Robert Stewart, Esq., was permitted to withdraw.

On May 10, 2012, Larkins, through Attorney Joshua Russell Roberts, timely filed a notice of appeal to the Superior Court of Pennsylvania.  On January 22, 2014, the appellate court affirmed Larkins's judgment of sentence, and Larkins filed a petition for allowance of appeal to the Supreme Court of Pennsylvania. (ECF No. 17-1 at 224-238, 272-302). On August 21, 2014, the Supreme Court denied Larkins's petition for allowance of appeal, and Larkins did not file a

---

[8] Mariah Bey was Larkins's girlfriend at the time.

[9] Renk initially testified that he believed that Chubs was actually Fat Herm. TT2 at 40. However, in Call 18, Larkins was intercepted saying, "Man naw, cause he said Fat Herm, Chubbs, he said all them n***s, he said he seen all of them." Transcript of Call 18 (ECF No. 17-1) at 381.  On cross examination, Renk acknowledged that "it is apparent that Fat Herm and Chubs are two different people." TT2 at 44.

petition for writ of certiorari to the United States Supreme Court. (ECF No. 17-1 at 304). *See Commonwealth v. Larkins*, 96 A.3d 1090 (Pa. Super. 2014), *appeal denied*, 97 A.3d 1043 (Pa. 2014) (table) ("*Larkins I*").

On May 1, 2015, Larkins timely filed *pro se* his first petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9545. (ECF No. 17-1 at 305-306). Attorney Christy Foreman was appointed to represent Larkins, and she filed an amended petition raising claims that Attorney Stewart was ineffective in his representation of Larkins at trial. (ECF No. 17-1 at 307-334). A hearing on Larkins's petition was held before Judge Durkin, and on April 20, 2017, and the PCRA court entered an order concluding that Larkins's issues did not merit relief. (ECF No. 17-1 at 397). After the reinstatement of his right to file an appeal *nunc pro tunc*, on August 29, 2017, Larkins filed an appeal to the Superior Court of Pennsylvania. (ECF No. 17-1 at 406-445). On May 8, 2018, the appellate court affirmed the order of the PCRA court. (ECF No. 17-1 at 534-544). Larkins timely filed a petition for allowance of appeal to the Supreme Court of Pennsylvania, and on December 5, 2018, the Supreme Court denied Larkins's petition. (ECF No. 17-1 at 548-596). *Commonwealth v. Larkins*, 192 A.3d 229 (Pa. Super. 2018), *appeal denied*, 198 A.3d 1053 (Pa. 2018) (table) ("*Larkins II*").

Having been denied relief in state court, Larkins *pro se* filed in this Court a habeas corpus petition pursuant to 28 U.S.C. § 2254, raising four claims.[10] *See* Amended Petition (ECF No. 10)

---

[10] Larkins initially filed his without the appropriate filing fee. (ECF No. 1).  On July 2, 2019, Larkins filed a petition for leave to proceed *in forma pauperis*, which was denied pending the payment of a $5.00 filing fee. (ECF Nos. 3, 4).  On July 23, 2019, Larkins submitted the filing fee, and the habeas petition was filed; however, this Court ordered Larkins to re-submit his petition as it did not substantially comply with the rules. (ECF Nos. 5-7).  On August 28, 2019, Larkins refiled the petition; however, the petition was not signed, and on August 30, 2019, this

at 5-10. On November 15, 2019, Respondents filed an Answer (ECF No. 14), and on November

26, 2019, Larkins filed a brief in support of his petition. (ECF No. 19).[11]  Subsequently, on

December 1, 2020, counsel for Larkins filed a notice of appearance and moved to file an

Amended Petition. (ECF Nos. 22, 24).  This Court granted that motion, and on September 28,

2021, counsel for Larkins filed a brief in support of the Amended Petition.[12] (ECF No. 34).  On

October 20, 2021, the Commonwealth filed an Amended Answer and Brief. (ECF No. 36).

---

Court ordered Larkins to submit a signed petition. (ECF Nos. 8-9). On September 18, 2019, Larkins submitted the signed petition. (ECF No. 10).  He set forth the following claims: (1) "Rights were violated when the trial court did not allow defense an effective cross-examination of the Commonwealth's star witness;" (2) "Ineffective assistance of counsel for not protecting defendant's rights for not objecting to irrelevant and prejudicial phone recordings;" (3) "Ineffective assistance of counsel for failure to investigate the Commonwealth's introduction of evidence that could have and should have been investigated, specifically the clothes in the form of a hoodie that was allegedly worn by defendant at the scene of the crime;" and (4) "Ineffective assistance of counsel for failure to object to evidence prejudicial to defendant, specifically pictures of the hoodie allegedly worn by defendant at the scene of the crime." Amended Petition (ECF No. 10) at 5, 7, 8, 10.

[11] In this brief, Larkins raised three separate issues, although one of those issues had subparts.  In his first issue, Larkins contended that the trial court abused its discretion by failing to permit counsel to cross-examine Vasser on having been removed as a deputy constable. *See* Larkins's Brief (ECF No. 19) at 11-22.  In his second issue, Larkins contended that trial counsel was ineffective for failing to investigate the hoodie the Commonwealth used as evidence and for failing to object to testimony of Wilson and Renk.  Larkins also contended that appellate counsel was ineffective for failing to raise these issues on appeal. *Id.* at 23-28. Finally, Larkins contended that the trial court "abused its discretion by admitting irrelevant telephone conversations." *Id.* at 28-36.

[12] In this brief, Larkins narrowed his issues and presents only two for this Court's review. *See* Larkins's Br. (ECF No. 34). In his first issue, Larkins contends that "[t]he trial court violated Petitioner's right to confrontation by prohibiting any cross-examination of former deputy constable Derek Vasser regarding any facts related to him being stripped of his job by the Honorable Judge Jeffrey A. Manning." *Id.* at 32.  Larkins also claims that trial counsel was

This Court has reviewed the filings of the parties, as well as the state court record, including the transcripts from the preliminary and pretrial hearings, trial, sentencing hearing, and PCRA hearing. The matter is fully briefed and ripe for disposition.

### The Standard for Habeas Relief under 28 U.S.C. § 2254

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011).  Federal courts reviewing habeas corpus petitions "must be vigilant and independent . . . a commitment that entails substantial judicial resources." *Id.*   However, "[t]he writ of habeas corpus is an extraordinary remedy that guards only against extreme malfunctions in the state criminal justice systems." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022) (internal quotation marks omitted).

The federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "imposes significant procedural and substantive limitations on the scope" of the Court's review.  *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017).   Under 28 U.S.C. § 2254, federal courts in habeas cases must give considerable deference to determinations of state trial and appellate courts.  *See Renico v. Lett*, 599 U.S. 766, 772 (2010).  Various standards must be met before the Court can review the merits of a habeas petition.

### Timeliness

Before the Court can address the merits of a habeas petition, it must first decide whether it was timely filed. *Romansky v. Superintendent Green SCI*, 933 F.3d 293, 298 (3d Cir. 2019).

---

ineffective for failing to raise specific objections to the wiretapped phone calls introduced by the Commonwealth at trial. *Id*. at 48.

Pursuant to AEDPA, a state prisoner must file his federal habeas claims within one year of the date his judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A).

Exhaustion

Another procedural prerequisite is the requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits. *Carpenter v. Vaughn*, 296, F.3d 138, 146 (3d Cir. 2002) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *Johnson v. Williams*, 568 U.S. 298, 302 (2013). "Fair presentation" of a claim merely requires the petitioner to "present [the] federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Greene v. Palakovich*, 606 F.3d 85, 93 (3d Cir. 2010) (citation omitted). For § 2254(d) purposes, a claim has been adjudicated on the merits "when a state court has made a decision that finally resolves the claim on the basis of its substance, rather than on a procedural, or other, ground." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 545 (3d Cir. 2014) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)).

Although mandatory, the exhaustion requirement "turns on an inquiry into what procedures are 'available' under state law." *O'Sullivan*, 526 U.S. at 847. Under Pennsylvania law, a federal claim becomes exhausted once it is presented to the Pennsylvania Superior Court, either as a direct appeal from a state criminal conviction or as an appeal from a PCRA Court's denial of post-conviction relief. *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004)

(finding that review from the Pennsylvania Supreme Court is unavailable, and therefore not required, for purposes of exhausting state court remedies).[13]

Procedural Default

If a state prisoner has not fairly presented a claim "to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play." *Carpenter*, 296 F.3d at 146 (citations omitted). The doctrine of procedural default serves as a corollary to the exhaustion requirement and provides a basis for a federal court to refuse to review a habeas claim. Federal courts may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate "cause" to excuse the default and "actual prejudice resulting from the alleged constitutional violation." *Preston v. Superintendent Graterford SCI,* 902 F.3d 365, 375  (3d Cir. 2018) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Wainwright v. Skyes*, 433 U.S. 72 (1977)), *cert. denied*, 139 S. Ct. 1613 (2019).[14] The

---

[13] Traditionally, under Pennsylvania law, exhaustion meant that a claim must be presented to the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court. *See Evans v. Court of Common Pleas, Delaware County*, *PA*, 959 F.2d 1227, 1230 (3d Cir. 1992). However, on May 9, 2000, the Pennsylvania Supreme Court issued Judicial Administration Order 218, which provides that "in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error. When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief. . . . " *In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (per curiam).

[14] A petitioner, alternatively, can overcome a procedural default by demonstrating that the court's failure to review the defaulted claim will result in a "miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 748 (1991); *McCandless v. Vaughn*, 172 F.3d 225, 260 (3d Cir. 1999). "However, this exception is limited to a 'severely confined category [] [of] cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner]'." *Preston,* 902 F.3d at n.11 (quoting *McQuiggin v. Perkins*, 569 U.S.

12

burden lies with a petitioner to demonstrate circumstances that would serve to excuse a procedural default. *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 750.

"Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted). To establish prejudice, a petitioner must show not merely that there were errors that created a possibility of prejudice, but that they "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). If cause and prejudice are established, the federal court reviews the claim "*de novo* because the state court did not consider the claim on the merits." *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017) (citation omitted).

### Larkins's Habeas Petition

The petition filed by Larkins, as well as each of his claims, will be reviewed with these standards in mind.

### Timeliness

In this case, Respondents do not contest that the petition was timely filed. Answer (ECF No. 17) at 20. For the purposes of both the one-year AEDPA and the PCRA limitations period,

---

383, 395 (2013) (internal alteration in original) (quoting *Schlup v. Delo*, 514 U.S. 298, 329 (1995)). Here, the Court concludes that nothing in the record suggests that Larkins could met the *Schlup* test. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (explaining that the miscarriage of justice standard "requires 'new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.'").

and because Larkins did not file a  petition for writ of certiorari to the United States Supreme Court, Larkins's judgment of sentence became final on November 19, 2014, which was the expiration of time to do so.[15]  When Larkins filed his PCRA petition on May 1, 2015, the one-year habeas statute was "immediately tolled." *Nelson v. Superintendent of SCI-Retreat*, 2019 WL 897296 *2 n.4 (E.D. Pa. Jan. 31, 2019). At that point, only 163 days of the limitations period had expired. Larkins's PCRA petition remained pending in the state court system until December 5, 2018, when the Pennsylvania Supreme Court denied Larkins's petition for allowance of appeal.   Because Larkins did not seek review by the United States Supreme Court, the AEDPA statute of limitations began to run again on March 5, 2019.  Thus, Larkins had until September 23, 2019, to file timely a federal habeas petition.  The instant Petition was filed on May 17, 2019.[16]  Thus, the Court agrees that the instant petition was timely filed.

Having concluded the petition was timely filed, this Court will now consider the merits of both grounds for relief, after first assessing exhaustion and procedural default.

Ground 1: Cross-Examination of Derek Vasser

---

[15] "A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review." U.S. Sup. Ct. R. 13.

[16] Pennsylvania and federal courts employ the prisoner mailbox rule, pursuant to which the pro se petition is deemed filed when it is given to prison officials for mailing. *See Perry v. Diguglielmo*, 169 F. App'x 134, 136 n.3 (3d Cir. 2006) (citing *Commonwealth v. Little*, 716 A.2d 1287 (Pa. Super. 1998)). In this case, Larkins certified that he gave his habeas petition to prison officials on May 17, 2019, and it will be deemed filed on that date.

Furthermore, in *Mayle v. Felix*, 545 U.S. 644, 664, 125 S. Ct. 2562, 2574, 162 L. Ed. 2d 582 (2005), the United States Supreme Court held that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order."  It appears that both of the instant claims relate back to claims Larkins raised in his original petition.

Larkins first contends that the "trial court violated [his] right to confrontation by prohibiting any cross-examination of former deputy constable Derek Vasser regarding any facts related to him being stripped of his job by the Honorable Judge Jeffrey A. Manning on October 4, 2010[,] after a three-day hearing initiated by the Allegheny County District Attorney's Office." Amend. Pet. (ECF No. 34) at 32.  Respondents concede that this ground "is exhausted as it was raised and addressed in state court [on direct appeal]." Resp. Br. (ECF No. 36) at 5.

*Exhaustion*

In his habeas petition, Larkins contends that both the trial court and Superior Court erred, and their holdings were contrary to the law found in *Davis v. Alaska*, 415 U.S. 308, 316 (1974).[17] Amend. Pet. (ECF No. 34) at 38. Larkins also cites to the transcript Vasser's hearing before Judge Manning and the opinion authored by Judge Manning. *Id*. at 32-37.

As discussed *supra*, prior to trial, the Commonwealth filed a motion *in limine* to prevent Larkins from cross-examining or impeaching Vasser regarding his being removed as a constable or having been found incredible by Judge Manning.  Specifically, the Commonwealth sought to preclude "evidence related to the fact that [] Derek Vasser engaged in misconduct while acting in his capacity as a deputy constable and/or evidence that Mr. Vasser's appointment as a deputy

_____

[17] In that case, the United States Supreme Court "granted certiorari [] to consider whether the Confrontation Clause requires that a defendant in a criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias deriving from the witness' probationary status as juvenile delinquent when such an impeachment would conflict with a State's asserted interest in preserving the confidentiality of juvenile adjudications of delinquency." *Davis*, 415 U.S. at 309. "[T]he Supreme Court held that the Confrontation Clause requires that a criminal defendant be permitted to impeach the credibility of a prosecution witness with that witness's probation status as a juvenile delinquent, even though the state asserted a strong and valid interest in preserving the confidentiality of juvenile delinquency adjudications." *Grant v. Lockett*, 709 F.3d 224, 235 (3d Cir. 2013) (abrogated on other grounds).

constable was revoked due to that misconduct." Motion *in Limine* (ECF No. 17-1) at 41.  The Commonwealth contended that Larkins should be precluded from utilizing this evidence as impeachment of Vasser pursuant to Pennsylvania Rules of Evidence 403[18] and 608.[19]  *See* Hearing Transcript, 3/8/2011, at 4-5.

On March 17, 2011, the trial court entered an order barring Larkins from introducing this evidence. Order (ECF No. 17-1) at 47.  On direct appeal, Larkins contended that "[t]he trial court erroneously prevented [] Larkins from exploring Vasser's interests and motives in the outcome of this matter." Larkins's Br. On Direct App. (ECF No. 17-1) at 118.   Notably, Larkins contended that Vasser "could have been trying to save his job, bolster his reputation, or obtain leniency from Judge Manning." *Id.* at 120.   Larkins cited to *Davis v. Alaska*, 415 U.S. 308, 316 (1974).[20] *Id.* at 116.

---

[18] This rule provides that "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

[19]  That Rule provides the following, in relevant part: "(b) Specific Instances of Conduct. Except as provided in Rule 609 (relating to evidence of conviction of crime), (1) the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct; however, (2) in the discretion of the court, the credibility of a witness who testifies as to the reputation of another witness for truthfulness or untruthfulness may be attacked by cross-examination concerning specific instances of conduct (not including arrests) of the other witness, if they are probative of truthfulness or untruthfulness; but extrinsic evidence thereof is not admissible." Pa.R.E. 608.

[20] In that case, the United States Supreme Court "granted certiorari [] to consider whether the Confrontation Clause requires that a defendant in a criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias deriving from the witness' probationary status as juvenile delinquent when such an impeachment would conflict with a State's asserted interest in preserving the confidentiality of juvenile adjudications

The Commonwealth responded that this evidence was irrelevant because Larkins's trial occurred "after Judge Manning had already removed Vasser as constable," and moreover, the other evidence against Larkins was overwhelming, and therefore any error was harmless. Commonwealth's Br. on Direct Appeal (ECF No. 17-1) at 180.   In considering this issue, the Superior Court held that it did not "find any merit to appellant's suggestion that Vasser lied when identifying appellant as a shooter in an attempt to look like a hero, save his job as a deputy constable, and bolster his tarnished reputation." Larkins I (ECF No. 17-1) at 232.  The Superior Court pointed out that it found Larkins's

> logic regarding Vasser's interests and motive in the outcome of the trial to be faulty. Rather, it could be argued that the loss of his deputy constable title would tend to motivate Vasser to be truthful on the witness stand so that he would not suffer further punishment. He certainly did not need to ingratiate himself to his superiors with appellant's conviction as the prior matter of his investigation was closed. Furthermore, Vasser's testimony was supported by other witnesses and with the scientific evidence that established appellant's identity as the shooter. Appellant was found underneath the vehicle where the murder weapon was also found, a fact witnessed not only by Vasser, but by Wilson and Officer Zeltner. Appellant had gunshot residue on his hands, and his DNA could not be excluded as a contributor of the DNA found on the Glock .9–mm. Testimony was also presented that appellant had attempted to disguise himself with a wig. Therefore, as stated by the Commonwealth, any error in failing to admit evidence of Vasser's purported motive to lie would have been harmless. *See Commonwealth v. Kouma*, 53 A.3d 760, 770-771 (Pa.Super.2012) (in light of overwhelming evidence of defendant's guilt, the trial court's evidentiary ruling was, at most, harmless error).

*Id.* at 233-34.

---

of delinquency." *Davis*, 415 U.S. at 309. "[T]he Supreme Court held that the Confrontation Clause requires that a criminal defendant be permitted to impeach the credibility of a prosecution witness with that witness's probation status as a juvenile delinquent, even though the state asserted a strong and valid interest in preserving the confidentiality of juvenile delinquency adjudications." *Grant v. Lockett*, 709 F.3d 224, 235 (3d Cir. 2013) (abrogated on other grounds).

Based on the foregoing, because both the trial court and Superior Court considered this claim on the merits, this Court agrees with the parties that Larkins has adequately exhausted this claim, and review by this Court is proper.

*Standard of Review*

When a claim is properly exhausted in the state courts and then raised on federal habeas review, the level of deference afforded to the state-court decision is substantial. *Bey*, 856 F.3d at 236.  The AEDPA "does not 'permit federal judges to . . . casually second-guess the decisions of their state-court colleagues or defense attorneys.'" *Collins*, 742 F.3d at 543 (quoting *Burt v. Titlow*, 571 U.S. 12, 14 (2013)). As a result, under § 2254(d), federal habeas relief is unavailable for exhausted claims unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

This is an intentionally difficult standard to meet. *Richter*, 562 U.S. at 102. Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" clearly established Supreme Court precedent. *Id*. Thus, to obtain federal habeas relief on an exhausted claim, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Id*. at 103.

*Merits*

Having concluded that Larkins exhausted this issue, this Court may now turn to the merits.   It is Larkins's position that his right to "confrontation" was violated because the United States Supreme Court has held that bias evidence is "always relevant." Larkins's Br. (ECF No. 34) at 38.   According to Larkins, Vasser, who had been cited for wrongdoing in August 2009, "had every reason to be biased to curry favor with the prosecutors." *Id.* at 40.

The Confrontation Clause of the Sixth Amendment confers a constitutional right upon the defendant to conduct cross-examination that reveals any motive that a witness may have to testify falsely; however, that right is not unlimited:

> The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), "means more than being allowed to confront the witness physically." *Davis*, [415 U.S. at 315]. Indeed, "'the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" *Id.*, at 315-316, [] (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)). Of particular relevance here, "we have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, *supra*, at 316-317[] (citing *Greene v. McElroy*, 360 U.S. 474, 496[,] [](1959)). It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, and prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (*per curiam* ).

19

*Commonwealth v. Bozyk*, 987 A.2d 753, 756-57 (Pa. Super. 2009) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678-679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (emphases omitted)).

While cross-examination of a witness regarding bias is relevant, questioning a police witness about disciplinary matters unrelated to the circumstances of the case is generally not permitted.

> The pertinent case law permits a police witness to be cross-examined about misconduct as long as the wrongdoing is in some way related to the defendant's underlying criminal charges and establishes a motive to fabricate. *Commonwealth v. Peetros*, 517 Pa. 260, 535 A.2d 1026 (1987) (police witness had been demoted after it was discovered he repeatedly took bribes; defendant was improperly restricted from impeaching him with this evidence since it bolstered entrapment defense in defendant's bribery prosecution); *Commonwealth v. Dawson*, 486 Pa. 321, 405 A.2d 1230 (1979) (police officer was under investigation at trial and had been demoted for beating defendant's co-defendant; defendant should have been permitted to question officer about the matter since it provided officer with motive to obtain conviction against defendant as well as to fabricate fact that defendant had confessed); *Commonwealth v. Sullivan*, 485 Pa. 392, 402 A.2d 1019 (1979) (police witness faced suspension based upon outcome at defendant's trial and defendant should have been allowed to explore that matter at his trial); *Commonwealth v. Shands*, 338 Pa.Super. 296, 487 A.2d 973 (1985) (defendant awarded new trial because he had not been permitted to impeach officer with fact that he was part of group of police officers who were racially biased, made false arrests, and perjured themselves in criminal prosecutions).

> However, if the prior police behavior is unrelated to the present matter and irrelevant, the trial court is permitted to restrict questioning on the prior incident. *Commonwealth v. Boczkowski*, 577 Pa. 421, 846 A.2d 75 (2004) (fact that police witness withheld evidence in prior case was not relevant because there was no evidence of withholding evidence in case at hand); *Commonwealth v. Bright*, 279 Pa.Super. 1, 420 A.2d 714 (1980) (defendant could not impeach police officer with potential disciplinary action for excessive use of force by different officer since that cross-examination had no relationship to case in question); *see also Commonwealth v. Guilford*, 861 A.2d 365, 369 (Pa.Super.2004) ("a witness may not be contradicted on 'collateral' matters, ... and a collateral matter is one which has no relationship to the case at trial.").

*Bozyk*, 987 A.2d at 757 (some citations omitted).

Here, the Superior Court also recognized that the circumstances alleged by Larkins are speculative. Larkins has not set forth any allegation that there is a relationship between Vasser's conduct that led to his dismissal as a constable and the conduct in the instant case. Since such nexus is generally required in Pennsylvania to explore this line of questioning, this Court concludes that the conclusion is not so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Richter*, 562 U.S. at 103.

Moreover, even if the Superior Court erred in concluding the trial court did not err by excluding this testimony, this Court must still consider whether the Superior Court's conclusion that such error was harmless was unreasonable.

> [The Pennsylvania Supreme Court] has long held "[w]here a trial error violates the federal constitution, this Court, at a minimum, must employ the federal harmless error rule." *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155, 162 (1978), *citing Chapman v. California*, 386 U.S. 18, 21, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). A constitutional error cannot be found harmless unless an appellate court is convinced beyond a reasonable doubt that the error was harmless. *Id*. However, "[i]f there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless." *Commonwealth v. Mitchell*, 576 Pa. 258, 839 A.2d 202, 214 (2003). The Commonwealth bears the burden of establishing harmlessness beyond a reasonable doubt. *Id*. at 215. This Court will find harmless error where:
>
> (1) the error did not prejudice the defendant or the prejudice was *de minimis*;
>
> (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or
>
> (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Brown*, 185 A.3d 316, 330 (Pa. 2018) (quoting *Commonwealth v. Young*, 748 A.2d 166, 193 (Pa. 1999) (citation omitted)).

As discussed *supra*, the Superior Court concluded that this error was harmless due to the numerous other witnesses and physical evidence presented.  In considering this claim under this Court's deferential review, such a conclusion is not unreasonable and Larkins is not entitled to relief. *See Commonwealth v. Culmer*, 604 A.2d 1090 (Pa. Super. 1992) (holding that error in restricting cross-examination of victim on pending criminal charges was ruled harmless when the victim's testimony was corroborated in detail by another eye witness and the inference of bias was extremely tenuous);  *Johnson v. Lamas*, 850 F.3d 119, 134 (3d Cir. 2017) (point out that a "federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable").

### Ground II: Ineffective Assistance of Counsel

In Larkins's second ground for relief, he contends that trial counsel was ineffective for failing to object to the admission of the wiretapped phone calls admitted during the testimony of Detective Renk. Larkins's Br. (ECF No. 34) at 52-63.  Specifically, it is Larkins's position that trial counsel was ineffective for failing to make specific objections to Renk's testimony, and PCRA counsel was ineffective for failing to present this issue in a way that would be ruled upon by the Superior Court. *Id*. at 48-49.

*Exhaustion and Default*

In considering this issue, both Larkins and the Respondents agree that this claim was not exhausted and is procedurally defaulted.[21] *See* Larkins's Br. (ECF No. 34) at 49; Resp. Br. (ECF No. 36) at 7.  However, Larkins contends that this Court may consider this claim pursuant to the exception set forth in *Martinez v. Ryan*, 566 U.S. 1 (2012).[22]  It is Respondent's position that this claim does not qualify for a *Martinez* exception, and therefore it should not be considered by this Court. Resp. Br. (ECF No. 36) at 7-8.

The United States Supreme Court has recently clarified the narrow nature of the *Martinez* exception, recognizing that "a federal court is not required to automatically deny unexhausted or

---

[21] Procedural default occurs when a state remedy is technically exhausted because an issue has either not been raised in state court or the issue was dismissed in state court on procedural grounds, and there is no available state remedy remaining.

> State prisoners, however, often fail to raise their federal claims in compliance with state procedures, or even raise those claims in state court at all. If a state court would dismiss these claims for their procedural failures, such claims are technically exhausted because, in the habeas context, "state-court remedies are ... 'exhausted' when they are no longer available, regardless of the reason for their unavailability." *Woodford v. Ngo*, 548 U.S. 81, 92–93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). But to allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule. *See Coleman*, 501 U.S. at 732, 111 S.Ct. 2546. Thus, federal habeas courts must apply "an important 'corollary' to the exhaustion requirement": the doctrine of procedural default. *Davila*, [] 137 S.Ct., at 2064. Under that doctrine, federal courts generally decline to hear any federal claim that was not presented to the state courts "consistent with [the State's] own procedural rules." *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

*Shinn*, 142 S. Ct. at 1732.

[22] "When a claim is procedurally defaulted, a federal court can forgive the default and adjudicate the claim if the prisoner provides an adequate excuse. One common excuse for procedural default is based on the equitable rule first announced in *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012)." *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 720 (3d Cir. 2022) (some citations and quotation marks omitted).

procedurally defaulted claims." *Shinn*, 142 S. Ct. at 1732.   "[F]ederal courts may excuse procedural default only if a prisoner can demonstrate **cause** for the default and actual prejudice as a result of the alleged violation of federal law." *Id*. at 1733 (internal quotation marks omitted; emphasis added). "[I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State." *Id*. However, "in proceedings for which the Constitution does not guarantee the assistance of counsel at all, [such as post-conviction proceedings,] attorney error cannot provide cause to excuse a default." *Id*. *Martinez* represents a "narrow exception" to this rule, holding "ineffective assistance of state postconviction counsel may constitute 'cause' to forgive procedural default of a trial-ineffective-assistance claim, but only if the State requires prisoners to raise such claims for the first time during state collateral proceedings." *Id*. Because Pennsylvania requires that ineffective-assistance-of-trial-counsel claims be raised on collateral review, this Court agrees with Larkins that the procedural default may be analyzed pursuant to the *Martinez* exception.

The following background is relevant. In his timely-filed, counseled PCRA petition, Larkins asserted that trial counsel was ineffective for "failure to raise timely objections to prejudicial and speculative testimony in these telephone conversations." Amend. PCRA Petition (ECF No. 17-1) at 317.[23] The PCRA court conducted a hearing on this issue, and concluded that

---

[23] Notably, on direct appeal, Larkins argued "that the trial court abused its discretion in allowing the Commonwealth to play for the jury a series of telephone conversations between him and various people intercepted as part of a federal wiretap investigation." *Larkins I* at 11. The Superior Court concluded that this issue was waived because it was "unable to locate any objection made by the defense concerning the detective's testimony regarding his interpretation of various terms." *Id*. at 12. Similarly, the Superior Court concluded that trial counsel's failure to object "to portions of the calls that he felt were prejudicial" rendered those waived. *Id*. at 14. However, the Superior Court addressed other arguments set forth by Larkins on the merits and rejected them. Specifically, the Superior Court concluded that the evidence was "relevant" and

Larkins "has failed to set forth what other 'specific' objections should have been made to make said evidence inadmissible.  Therefore, the issue is without merit."[24] PCRA Court Opinion (ECF No. 17-1) at 456.  In his habeas petition, Larkins contends that PCRA counsel was ineffective in drafting the Amended PCRA Petition. Larkins's Br. (ECF No. 34) at 49.

"For PCRA counsel's performance to qualify as constitutionally deficient, it must fall 'below an objective standard of reasonableness,' and [petitioner] must be prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984*).*" *Lambert v. Warden Greene SCI*, 861 F.3d 459, 469 (3d Cir. 2017). "Even if he can meet this standard, he must also 'demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has 'some merit'.' *Martinez*, 132 S.Ct. at 1318-19 (citation omitted)." *Id*.  In these instances, the Third Circuit Court of Appeals addresses the ineffective-assistance-of-trial-counsel claim first. *See id*. ("Because the merit of Lambert's ineffective-assistance-of-trial-counsel claim informs our consideration of whether PCRA counsel was ineffective and whether Lambert was prejudiced by PCRA counsel's conduct, we address his ineffective-assistance-of-trial-counsel claim first."). Thus, this Court will consider Larkins's ineffective-assistance-of-trial-counsel claim.

that the trial court acted within its discretion "in determining that under the facts of this case, the conversations were not too remote where they occurred a few months before the murders." *Id*. at 13.  In addition, the Superior Court concluded that "the evidence presented at trial strongly suggests that the 'Fat Herm' mentioned in the recordings was in fact Herman Moore.  Thus, the Superior Court also concluded that the trial court did not abuse its discretion.  *Id*.

[24] On appeal, the Superior Court concluded that Larkins's entire argument "is a near-verbatim reproduction of the argument in his amended PCRA petition*." Larkins II* (ECF No. 17-1) at 541. Thus, the PCRA court rejected this issue on the basis that Larkins did not "frame his issue with respect to any error by the PCRA court." *Id*. at 542.  Accordingly, the PCRA court denied relief to Larkins.

Clearly established federal law governing ineffectiveness claims is set forth in the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Premo v. Moore*, 562 U.S. 115, 121 (2011).  Under the first prong of *Strickland*, often referred to as the "performance" prong, a petitioner must show that counsel's performance fell below an objective standard of reasonableness.  *Id.* at 688.  Under the second prong, often referred to as the "prejudice" prong, a petitioner must demonstrate that the deficient performance prejudiced him, meaning that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 692.  Although a petitioner must satisfy both prongs to succeed on his ineffectiveness claim, the Supreme Court noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at  697.  *See also Mathias v. Superintendent Frackville SCI*, 876 F.2d 462, 477 (3d Cir. 2017).

The dispute in this case concerns the admission of evidence of prior bad acts, which is governed by Pennsylvania Rule of Evidence 404. That rule provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1).  "Evidence of other bad acts may, however, be admitted if offered for another purpose, such as proof of motive, opportunity, intent, preparation, plan, or common scheme. Pa.R.E. 404(b)(2)." *Commonwealth v. Cook*, 597 Pa. 572, 615, 952 A.2d 594, 620 (2008).  Furthermore, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence." Pa.R.E. 403.  Instantly, Larkins analyzes each phone call and sets forth the objection or objections that counsel should have made pursuant to Rule 404.

<u>*Call 1*</u>

With respect to Phone Call 1, Larkins asserts trial counsel should have objected to the early portions of the call that contained inadmissible prior bad acts, such as the fact that Larkins "had his own legal troubles" and that he associated with others who also had legal troubles.[25] Larkins's Br. (ECF No. 34) at 54.  It is Larkins's position that this portion of the call had no probative value and was "extremely prejudicial." *Id*. at 55.

Assuming *arguendo* that Larkins is correct, that trial counsel should have objected to the admission of the first part of Call 1, and that objection would have been sustained, Larkins has still failed to meet the standard to demonstrate prejudice because the result of the trial would not have been different.  Larkins was convicted based upon his presence near the scene, eyewitness testimony and supporting physical evidence. Even if the jury had not heard these few minutes of a single phone call, Larkins still would have been convicted.  *See Commonwealth v. Gamble,* 258 A.3d 505 (Pa. Super. 2021) (holding that PCRA counsel failed to establish prejudice because "even if counsel had objected to this statement, it would not have altered the result of the trial …. where Appellant's convictions were due to the overwhelming evidence against him"); *United States v. Martin*, 262 F. App'x 392, 398 (3d Cir. 2008) (holding that even "if Martin's trial counsel's performance was deficient, Martin did not demonstrate prejudice" where there was adequate other evidence to support a conviction).

---

[25] Larkins acknowledges that the final part of the call was admissible. *See* Larkins's Br. (ECF No. 34) at 55 ("[T]he only portion of this call that was admissible was the portion on Page 3 that discussed a dispute between [Larkins] and 'Fat Herm.'").

Accordingly, Larkins's underlying claim of ineffective assistance of trial counsel fails, and therefore PCRA counsel could not have been ineffective for failing to present this argument properly in the PCRA petition. Thus, Larkins has failed to overcome the procedural default, and this Court agrees with Respondents that this claim is not properly before this Court. *See Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014) ("[T]he *Martinez* exception to procedural default applies only where the petitioner demonstrates ineffective assistance by post-conviction counsel[.]").

### *Calls 3 through 19*

With respect to phone calls 3 through 19, Larkins contends that trial counsel should have objected to the relevance of these phone calls because they did not establish that Larkins had a motive to kill Moore. Instead, according to Larkins, admission of these phone calls was prejudicial error because they "allowed the prosecutor to argue that [Larkins] had previously attempted to murder **someone** outside the Mac-Can-Do Bar on a previous occasion."[26] Larkins's Br. at 62 (emphasis added).

With respect to these calls, had the Commonwealth been attempting to show merely that Larkins had previously attempted to kill someone, this Court agrees with Larkins that that evidence should not have been admitted because it would have only shown that Larkins may have attempted murder at another time. *See* Pa.R.E. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). However, at trial, the

---

[26] This is an inaccurate representation of the Commonwealth's argument at trial. It was the Commonwealth's position at trial that these phone calls were admissible because "it is evident that [Larkins] was essentially trying to kill **Fat Herm** down at the Mac-Can-Do Bar on" the day the call was made. TT2 at 9 (emphasis added).

Commonwealth offered this evidence to show that Larkins had previously tried to kill **Moore**.

*See* TT2 at 9.  Such evidence is admissible as evidence of identity.  In Pennsylvania,

> [t]he identity exception is set forth in *Commonwealth v. Shively*, 424 A.2d 1257 (Pa. 1981), as follows:
>
>> "[ ]Evidence of other crimes is admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial, in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Commonwealth v. Wable*, 382 Pa. 80, 82, 114 A.2d 334, 336–37 (1955)....
>
> *Shively*, 424 A.2d at 1259 (emphasis added).  Thus, the purpose of the identity exception is, quite obviously, to prove that the identity of the accused and the perpetrator of crime are one in the same.

*Commonwealth v. Tressler*, 2018 WL 2212963, at \*6 (Pa. Super. 2018) (unpublished opinion).

In this matter, the Commonwealth was utilizing the August 23, 2009, phone calls to establish that Larkins had previously tried to shoot Moore by locating him outside the Mac-Can-Do Bar, and this evidence was admissible for this purpose.

Thus, even if trial counsel had objected on the basis of relevance, that objection would have been overruled because the evidence was admissible pursuant to the identity exception. Trial counsel cannot be ineffective for failing to object to evidence that would have been admitted anyway. *See Commonwealth v. Spotz*, 587 Pa. 1, 33, 896 A.2d 1191, 1210 (2006) ("Counsel will not be deemed ineffective for failing to raise a meritless claim.").  Accordingly, Larkins's underlying claim of ineffective assistance of trial counsel fails, and therefore PCRA counsel could not have been ineffective for failing to present this argument properly.  Thus, Larkins has not overcome the procedural default, and this Court agrees with Respondents that

this claim is not properly before this Court. *See Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014) ("[T]he *Martinez* exception to procedural default applies only where the petitioner demonstrates ineffective assistance by post-conviction counsel[.]").

Having concluded that Larkins's claims related to trial counsel's failure to raise specific objections to the phone calls that were admitted as evidence at trial are procedurally defaulted, Larkins is not entitled to relief on this ground.

## Conclusion

For all of the above reasons, the Petition and Amended Petition for a Writ of Habeas Corpus will be denied.  Further, as there is no basis upon which to grant a certificate of appealability, a certificate of appealability likewise will be denied.    An appropriate Order follows.

## ORDER OF COURT

**AND NOW,** this 27th day of October, 2022, for the reasons set forth in the Memorandum above, it is hereby **ORDERED** that Larkins's § 2254 Amended Petition (ECF No. 10) be, and the same hereby are, **DENIED**  and a certificate of appealability is **DENIED**.

The Clerk of Court is directed to close this case.

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge


cc:     Counsel of Record

        via ECF notification